IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 2:14-899 |
| COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, FIFTH JUDICIAL DISTRICT OF PENNSYLVANIA, | ) ) ) ) ) ) | Judge Nora Barry Fischer |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.    Introduction**

The instant action involves allegations that an elderly individual was unlawfully deprived of an employment opportunity because of her age. Defendant has moved for the dismissal of this action on the ground that it is barred by the Eleventh Amendment to the United States Constitution.[1] ECF No. 8. For the reasons that follow, Defendant's motion to dismiss will be denied.

**II.    Background**

On February 7, 2012, a staffing agency assigned Carolyn J. Pittman ("Pittman") to work on a scanning project at the Court of Common Pleas of Allegheny County, Fifth Judicial District

---

[1] The motion filed by the Court of Common Pleas states that the EEOC's complaint "fails to state a claim upon which relief can be granted." ECF No. 8 at 1. Given the language used by the Court of Common Pleas, the motion appears to be based on Federal Rule of Civil Procedure 12(b)(6). FED. R. CIV. P. 12(b)(6). The Eleventh Amendment, however, operates as a limit on "[t]he Judicial power of the United States." U.S. CONST., AMEND. XI. A State's invocation of its Eleventh Amendment immunity constitutes a challenge to a federal court's subject-matter jurisdiction to entertain an action. *Christ the King Manor, Inc., v. Secretary, United States Dept. of Health & Human Services*, 730 F.3d 291, 318 (3d Cir. 2013). Therefore, the motion presently before the Court could also be regarded as a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(1). *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693, n. 2 (3d Cir. 1996); FED. R. CIV. P. 12(b)(1).

1

of Pennsylvania ("Court of Common Pleas"). ECF No. 1 at ¶¶ 8, 16. Pittman, who was seventy years old, commenced her duties on February 14, 2012. *Id.* at ¶ 9. Lisa Moore ("Moore"), an employee of the Court of Common Pleas, was responsible for training and supervising Pittman. *Id.* at ¶ 10. During the ensuing six-week period, Moore allegedly complained that Pittman was "too old" to perform her assigned tasks. *Id.* at ¶ 11. Some of Moore's comments suggested that Pittman could not "see well enough" to do her job. *Id.* At some point, Moore told managers employed by the Court of Common Pleas that Pittman was making too many mistakes. *Id.* at ¶¶ 12-14.

An employee of the Court of Common Pleas contacted the staffing agency on March 28, 2012, and advised that Pittman needed to be removed from her job. *Id.* at ¶ 15. Later that day, an employee of the staffing agency told Pittman that the scanning project had concluded, and that she would no longer be working at the Court of Common Pleas. *Id.* at ¶ 16. The scanning project evidently continued after Pittman's departure. *Id.* at ¶ 17. It is alleged that Pittman was eventually "replaced by at least one much younger worker." *Id.* at ¶ 18.

The Equal Employment Opportunity Commission ("EEOC") commenced this action on July 8, 2014, alleging that the Court of Common Pleas had violated the Age Discrimination in Employment Act of 1967 ("ADEA") [29 U.S.C. § 621 *et seq.*] by discharging Pittman because of her age. ECF No. 1. The Court of Common Pleas filed a motion to dismiss on August 28, 2014, contending that this action was barred by the Eleventh Amendment. ECF No. 8. The EEOC filed a Brief in Opposition on September 22, 2014. ECF No. 11. The Court of Common Pleas filed a Reply on October 6, 2014. ECF No. 14. The motion is now ripe for disposition.

### III.   Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction over the plaintiff's claims. FED. R. CIV. P. 12(b)(1). "At

issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F.Supp.2d 753, 759 (W.D.Pa. 2007), quoting *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977). As the party asserting that jurisdiction exists, the plaintiff bears the burden of showing that his or her claims are properly before the court. *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). In reviewing a Rule 12(b)(1) motion, a court must determine whether the attack on its jurisdiction is a facial attack or a factual attack. A facial attack challenges the sufficiency of the plaintiff's pleadings on jurisdictional grounds. *Petruska v. Gannon University*, 462 F.3d 294, 302, n. 3 (3d Cir. 2006). When considering a facial attack, a court must accept the allegations contained in the plaintiff's complaint as true. *Id.* A factual attack on the court's jurisdiction must be treated differently. *Id.* When considering a factual attack, the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court from deciding for itself whether jurisdiction over the plaintiff's claims can be properly exercised. *Mortensen*, 549 F.2d at 891.

In light of the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008), quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard requires more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must allege a sufficient number of facts "to raise a right to relief above the speculative level." *Id.*

3

This requirement is designed to facilitate the notice-pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of [a] claim *showing* that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(emphasis added).

In considering a motion to dismiss filed pursuant to Rule 12(b)(6), a court accepts all of the plaintiff's allegations as true and views all reasonable inferences drawn from those allegations in the light most favorable to the plaintiff. *Buck v. Hampton Township School District*, 452 F.3d 256, 260 (3d Cir. 2006). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989). In addition to the allegations contained in the complaint, a court may consider matters of public record, exhibits attached to the complaint, and other items appearing in the record of the case. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384, n. 2 (3d Cir. 1994).

### IV. <u>Jurisdiction and Venue</u>

This action has been brought by an agency of the United States seeking to redress an alleged violation of federal law. The Court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1331 and 1345. Venue is proper under 28 U.S.C. § 1391(b).

### V. <u>Discussion</u>

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

4

the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST., AMEND. XI. Although the applicable constitutional text does not expressly bar an action brought by a citizen against his or her State of residence, the Supreme Court has explained that the precise language of the Eleventh Amendment "does not define the scope of the States' sovereign immunity." *Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743, 753 (2002). Despite the narrow reach of its language, the Eleventh Amendment has been understood "to stand not so much for what is says, but for the presupposition of our constitutional structure which it confirms." *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991). "This presupposition is based on the understanding that 'the States entered the federal system with their sovereignty intact,' that '[t]he Judicial power of the United States' is limited by this sovereignty, and that a State will not be subjected to suits in federal court brought by private individuals unless it has consented to such suits either expressly or in the 'plan of the convention.'" *Burns v. Alexander*, 776 F.Supp.2d 57, 72 (W.D.Pa. 2011), quoting *Blatchford*, 501 U.S. at 779. In this vein, a State's immunity from suit extends to actions brought by its own citizens. *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 254 (3d Cir. 2010).

Congress has the constitutional authority to "enforce" the substantive provisions of the Fourteenth Amendment through the enactment of "appropriate legislation." U.S. CONST., AMEND. XIV, § 5. The Supreme Court has explained that Congress' "enforcement" authority, which comes from § 5 of the Fourteenth Amendment, includes the power to subject the States to private suits that would be "constitutionally impermissible in other contexts." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). A federal statute validly abrogates the States' Eleventh Amendment immunity to the extent that it "creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original). In

addition, Congress may authorize private suits against the States for violations of *statutory provisions* that "proscribe[] facially constitutional conduct[] in order to prevent and deter unconstitutional conduct." *Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 726-728 (2003). A statutory provision will be construed to abrogate the States' Eleventh Amendment immunity only if it contains "unmistakable language" expressing a congressional intent to subject the States to private actions that would otherwise be barred. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 243 (1985).

"As a consequence of our constitutional design, money damages are the exception when sovereigns are defendants." *Coleman v. Court of Appeals of Maryland*, 566 U.S.___, ___, (2012) (plurality opinion). The Fourteenth Amendment was intentionally crafted to be "an expansion of federal power and an intrusion on state sovereignty." *City of Rome v. United States*, 446 U.S. 156, 179 (1980). The authority of Congress to abrogate the States' constitutional immunity from private suits is premised on the Fourteenth Amendment, which was "enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 670 (1999). Unlike the powers granted to Congress under Article I, which were a part of the original constitutional plan, the Fourteenth Amendment "operated to alter the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 65-66 (1996). Because the same cannot be said about Congress' pre-existing legislative authority, the Supreme Court has declared that "Congress may not abrogate state sovereign immunity pursuant to its Article I powers." *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 627, 636 (1999).

Given that Congress' authority to abrogate the States' Eleventh Amendment immunity rests on its "power to enforce" the substantive provisions of the Fourteenth Amendment, its abrogation authority must be exercised within the limits of that enforcement power. *Mitchell v. Miller*, 884 F.Supp.2d 334, 365-369 (W.D.Pa. 2012). A legislative proscription can fall within the scope of that power even if it proscribes conduct that is not itself unconstitutional. *Katzenbach v. Morgan*, 384 U.S. 641, 648-650 (1966). Nonetheless, Congress lacks "the power to decree the substance of the Fourteenth Amendment's restrictions on the States." *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997). The power to define the meaning of the Constitution remains with the Judiciary. *PG Publishing Co. v. Aichele*, 902 F.Supp.2d 724, 735-736 (W.D.Pa. 2012). In order to observe the distinction between these legislative and judicial powers, the Supreme Court has drawn a "line between measures that remedy or prevent unconstitutional actions and measures that make a substantive change in the governing law." *Flores*, 521 U.S. at 519.

The Commonwealth of Pennsylvania vests its "judicial power" in a "unified judicial system." PA. CONST., ART. V, § 1. That system includes the "courts of common pleas." *Id.* "[T]he [Eleventh Amendment's] reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents[2] and state instrumentalities." *Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997). The constitutional immunity from suit provided

---

[2] A suit brought against a state official in his or her official capacity "is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Because the State is "the real party in interest" when an official-capacity action is commenced against one of its officials, the Eleventh Amendment may be implicated. *Kentucky v. Graham*, 473 U.S. 159, 165-167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Eleventh Amendment affords no protection to a state official who is sued in his or her personal capacity. *Hafer v. Melo*, 502 U.S. 21, 29-31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

under the Eleventh Amendment shields both a State and the "agencies acting under its control."[3] *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The United States Court of Appeals for the Third Circuit has held that the various components of Pennsylvania's "unified judicial system" are entitled to invoke the sovereign immunity enjoyed by the Commonwealth under the Eleventh Amendment. *Benn v. First Judicial District of Pennsylvania*, 426 F.3d 233, 238-241 (3d Cir. 2005). The Commonwealth has not waived its Eleventh Amendment immunity by statute. 42 PA. CONS. STAT. § 8521(b).

Relying on its status as an arm of the Commonwealth, the Court of Common Pleas maintains that the instant action is barred by the Eleventh Amendment. ECF No. 9 at 2-4; ECF No. 14 at 2. The EEOC does not appear to question the status of the Court of Common Pleas as an arm of the Commonwealth. Indeed, the complaint filed by the EEOC specifically describes the Court of Common Pleas as "an instrumentality of the state of Pennsylvania." ECF No. 1 at ¶ 4. The applicability of the Eleventh Amendment, however, depends as much on the identity of the plaintiff as it does on the identity of the defendant. "In ratifying the Constitution, the States consented to suits brought by other States or *by the Federal Government*." *Alden v. Maine*, 527 U.S. 706, 755 (1999) (emphasis added). For this reason, "suits by the United States against a State are not barred by the Constitution." *Employees of the Dept. of Public Health & Welfare of Missouri v. Dept. of Public Health & Welfare of Missouri*, 411 U.S. 279, 286 (1973). "Nothing in the Eleventh Amendment 'has ever been seriously supposed to prevent a State's being sued by the United States.'" *Arizona v. California*, 460 U.S. 605, 614 (1983), quoting *United States v. Mississippi*, 380 U.S. 128, 140 (1965). Since this action was commenced by an instrumentality

---

[3] An agency must constitute an "arm of the State" in order to enjoy Eleventh Amendment immunity. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280-281, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The immunity available to the States under the Eleventh Amendment does not extend to local governmental units. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690, n. 54 (1978); *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890).

8

of the Federal Government, the Commonwealth's Eleventh Amendment immunity is not implicated. *Idaho v. United States*, 533 U.S. 262, 271, n. 4 (2001).

The ADEA declares it to be "unlawful" for a covered employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Statutory protection from discrimination extends to individuals who have reached the age of forty. 29 U.S.C. § 631(a). The enforcement mechanism available under the Fair Labor Standards Act of 1938 ("FLSA") [29 U.S.C. § 201 *et seq.*] is incorporated within the ADEA by reference. 29 U.S.C. § 626(b).

In its original form, the ADEA did not apply to the States. Indeed, the ADEA specifically excluded the States from the statutory provision defining the class of covered employers. Pub. L. No. 90-202, § 11(b); 81 Stat. 602, 605 (1967). The Fair Labor Standards Amendments of 1974 broadened the ADEA's definition of the term "employer" to include "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State." Pub. L. No. 93-259, § 28; 88 Stat. 55, 74 (1974); 29 U.S.C. § 630(b). The FLSA was amended to permit individuals to bring civil actions against all covered employers, including public agencies. Pub. L. No. 93-259, § 6; 88 Stat. 55, 61 (1974); 29 U.S.C. § 216(b). The term "public agency" included "the government of a State or political subdivision thereof." 29 U.S.C. § 203(x).

Under Article I, § 8, of the United States Constitution, Congress has the power "To regulate Commerce . . . among the several States." U.S. CONST., ART. I, § 8. In *EEOC v. Wyoming*, 460 U.S. 226, 243 (1983), the Supreme Court held that the Commerce Clause provided Congress with the constitutional authority to make the ADEA's substantive provisions applicable to the States. Speaking through Justice Brennan, the Supreme Court squarely rejected

the idea that the ADEA's application to the States was precluded by the Tenth Amendment. *EEOC*, 460 U.S. at 236-243. Since the ADEA's provisions were valid under the Commerce Clause, the Supreme Court had no occasion to consider whether they also constituted valid exercises of Congress' power to enforce the Fourteenth Amendment. *Id.* at 243.

The Equal Protection Clause of the Fourteenth Amendment prohibits a State from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST., AMEND. XIV, § 1. "[A]ge is not a suspect classification under the Equal Protection Clause." *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991). In order to withstand constitutional scrutiny, classifications based on age need only be rationally related to a legitimate state interest. *Vance v. Bradley*, 440 U.S. 93, 97 (1979). This "relatively relaxed standard" permits a State to rely on age-based generalizations for the purpose of selecting its employees. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 314-317, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976)(*per curiam*). In contrast to the Equal Protection Clause, the ADEA does not permit an employer to rely on an individual's age as a proxy for assessing his or her effectiveness as an existing or potential employee. *Western Air Lines v. Criswell*, 472 U.S. 400, 421-423 (1985). Congress enacted the ADEA precisely because it wanted to prevent older workers from being denied employment opportunities "on the basis of inaccurate and stigmatizing stereotypes." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

Although the ADEA constitutes a valid exercise of legislative power rooted in Article I, Congress must rely on § 5 of the Fourteenth Amendment in order to "place the States on equal footing with private actors with respect to their amenability to suit." *Tennessee v. Lane*, 541 U.S. 509, 527, n. 16 (2004). The 1974 amendments extending the ADEA's coverage to the States evinced a clear legislative intent to abrogate the States' Eleventh Amendment immunity. Pub. L. No. 93-259, §§ 6, 28; 88 Stat. 55, 61, 74 (1974); 29 U.S.C. §§ 203(x), 216(b), 630(b).

Because of the vast differences between the constitutional mandate of the Equal Protection Clause and the statutory requirements established by the ADEA, the Supreme Court concluded in *Kimel v. Florida Board of Regents*, 528 U.S. 62, 78-92 (2000), that the ADEA did not constitute "appropriate legislation" falling within Congress' "power to enforce" the Fourteenth Amendment.

The Court of Common Pleas interprets *Kimel* to mean that the ADEA is "inapplicable" to the States. ECF No. 9 at 4. That reading of *Kimel* is simply incorrect. The Commerce Clause provides Congress with the constitutional authority to impose the ADEA's substantive requirements on the States. *EEOC*, 460 U.S. at 243. The question in *Kimel* was not whether the ADEA *applied* to the States. Instead, the question was whether the ADEA's substantive provisions could be *enforced* against the States by means of a civil action brought by private parties. *Kimel*, 528 U.S. at 79 ("Under our firmly established precedent then, if the ADEA rests solely on Congress' Article I commerce power, *the private petitioners in today's cases* cannot maintain *their suits* against their state employers.") (emphasis added). The holding in *Kimel*, which was based on the Eleventh Amendment, has no application to "[a] suit which is commenced or prosecuted against a State in the name of the United States by those who are entrusted with the constitutional duty to 'take Care that the Laws be faithfully executed.'" *Alden*, 527 U.S. at 755, quoting U.S. CONST., ART. II, § 3. Since the EEOC is the plaintiff in this action, it makes no difference whether the ADEA constitutes a valid exercise of Congress' "power to enforce" the Fourteenth Amendment. *EEOC*, 460 U.S. at 243. Unlike a private plaintiff, the Federal Government does not need to rely on a *statutory* "abrogation" of the States' Eleventh Amendment immunity. "[T]he relevant 'abrogation' is the one effected in the plan of the Convention." *Central Virginia Community College v. Katz*, 546 U.S. 356, 379 (2006).

The Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. § 12101 *et seq.*] contains a provision purporting to abrogate the States' Eleventh Amendment immunity. 42 U.S.C. § 12202. In *Board of Trustees v. Garrett*, 531 U.S. 356, 364-374 (2001), the Supreme Court determined that Title I of the ADA [42 U.S.C. §§ 12101-12117] did not constitute a valid exercise of Congress' § 5 authority. Consequently, the action commenced by the private plaintiff in that case was barred by the Eleventh Amendment. *Garrett*, 531 U.S. at 360. In a footnote appearing near the end of its decision, the Supreme Court made the following observations:

> Our holding here that Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I does not mean that persons with disabilities have no recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private parties in actions for injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908).

*Garrett*, 531 U.S. at 374, n. 9. The same principle applies to the ADEA. Since the ADEA constitutes a valid exercise of Congress' authority under the Commerce Clause, the relevant statutory provisions can be enforced against the States in actions brought by the EEOC. *EEOC*, 460 U.S. at 228, 243; *EEOC v. Washington Suburban Sanitary Commission*, 631 F.3d 174, 179-180 (4th Cir. 2011); *EEOC v. Board of Regents*, 288 F.3d 296, 298-301 (7th Cir. 2002).

In *EEOC v. United States Steel Corp.*, 921 F.2d 489, 496-497 (3d Cir. 1990), the United States Court of Appeals for the Third Circuit held that the doctrine of *res judicata* precluded individuals who had already litigated their own ADEA claims from obtaining individualized relief for the same claims in a subsequent action commenced by the EEOC. The Court of Common Pleas maintains that, under *United States Steel Corp.*, the EEOC "should be treated as an individual" to the extent that it seeks relief for Pittman. ECF No. 9 at 4. That decision, however, has no bearing on whether the instant action is barred by the Eleventh Amendment.

12

The Court of Common Pleas does not contend that Pittman has already litigated claims premised on her discharge. ECF No. 9 at 4. The mere fact that the EEOC may be precluded from relitigating a claim previously asserted by an individual employee does not convert the EEOC into the employee's proxy for all purposes related to the enforcement of federal law. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297-298 (2002). The argument advanced by the Court of Common Pleas was squarely rejected by the United States Court of Appeals for the Fifth Circuit in *EEOC v. Board of Supervisors*, 559 F.3d 270, 273-274 (5th Cir. 2009). The persuasive reasoning employed in that decision compels the denial of the pending motion to dismiss.

## VI. **Conclusion**

"The States and their officers are bound by obligations imposed by the Constitution and by federal statutes that comport with the constitutional design." *Alden*, 527 U.S. at 755. The Supreme Court has held that the substantive provisions of the ADEA may be constitutionally applied to the States. *EEOC*, 460 U.S. at 236-243. Given that the instant action constitutes "a suit *by the United States* against a State," the Court's exercise of jurisdiction in this case "is inherent in the constitutional plan." *Principality of Monaco v. Mississippi*, 292 U.S. 313, 329 (1934) (emphasis added). The motion to dismiss filed by the Court of Common Pleas (*ECF No. 8*) will be denied.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: October 15, 2014

cc/ecf: All counsel of record.